Mr. Chibe-Justice Cartter
delivered the opinion of the court.
We do not care to hear further argument in this case. We think the defendants were fairly tried and properly convicted, and that they are eminently worthy of punishment. The case, as it appears to us, was that of an inchoate sale, an incomplete delivery, and a conversion of the property by the defendants with a felonious purpose, while the sale was yet inchoate and incomplete.
The formula of the transaction, if dissected as the ingenuity of counsel in argument has ably attempted to do, might make another case. But is that the proper way to ' view this transaction in the light of the plain purpose of the law to punish guilt and to protect innocence?
*425 The complaining witness came to this city with a horse for sale, of which he had fixed the price, and upon the horse-market here he met the defendants Rogers and Hunter. He was inquired of by them if he wanted to sell his horse. He replied, “Yes, I want to sell my mare for $105 cash.” Said Rodgers, “ I would buy it if I could sell my horse for $100.” Hunter then and there, according to the statement of facts, said that he would pay Rodgers $100 for his horse. “ Yery well,” said the complaining witness, “ that makes a sale of ■my mare for $105.”
Now counsel for the defendants has discussed the case as if this was the merest innocent, accidental, segregated action conceivable on their part; that it all happened by mere blunder; that there was no concert of action or mutual understanding between Rodgers and Hunter; if that view of the facts could be tolerated the force of the argument would be conclusive. But the case as the evidence clearly shows it, is far otherwise.
The complaining witness, a countryman, is approached by these defendants with reference to a purchase of his mare ; as always happens in such cases, the consideration to be paid is not at hand, it is by mere accident a little way off, as in this instance the horse which Hunter pretended to buy of Rodgers was not at the horse market but at Rodgers’ house; the countryman was invited to go there, leave his mare., bring Rodgers’ horse to Hunter and receive the $100, and he went. Hunter told him that he (Hunter) lived in and owned a certain designated house, and that he (witness) should bring Rodgers’ horse there and receive his money. At Rodgers’ house the saddle was taken from the countryman’s mare, placed upon Rodgers’ horse, which the countryman rode back to the house pointed out by Hunter;- when he got there he found that Hunter did not live there and did not own the house. Hunter he could not find. He then rode back to Rodgers’ house, but both Rodgers and the mare had disappeared, just as you might accidentally suspect from this series of accidents. He then began to suspect that he had fallen among thieves, and made complaint to the police *426 through whose assistance he recovered his mare in another part of the city.
Now does this combination of facts, this series of circumstances, justify the conclusion that these defendants acted in concert, and that they conspired to get the complaining witness’ mare fraudulently out of his possession? ¥e think that such a conclusion is irresistible.
The demurrer was overruled in the court below upon the hypothesis, as we are advised by the charge of the court, that this transaction was one and entire; that Rodgers and Hunter were in design one person, that they mutually conspired and intended mutually to reap the benefit of the conspiracy.
The ground upon which we decide this case is that here was an incomplete sale, an incomplete or conditional delivery of the thing sold; that the transaction was not ripened and fully consummated until the purchase money had been paid for the mare ; that the title to the mare 'did not pass until the purchase money had been paid, and was not intended by the vendor to pass until then. The fact that Rodgers’ horse constituted one part of the consideration» and the five dollars paid by Rodgers another part of the consideration, and that the horse was saddled to convey the vendor to the place of payment of the balance of the purchase money, do not make it a complete transaction ; it ..could not become such until the purchase money had in fact been paid. ¥e hold that the right of property in the title to the mare remained in the vendor until the time of the payment of the purchase money, and as the purchase money was never paid the vendor never parted with his title to his mare.
If the question were res integra, I should myself hold that in no case could title pass where the possession has been obtained by fraud or deceit, and in my opinion there is no solid ground of distinction between cases where the title has been obtained by fraud and those in which only a naked possession has been so obtained. To say that a vendor has parted with his title under such circumstances may be correct in terms, but how has he parted with it? "Why, under the in *427 fluence of fraud and false pretences. • His judgment and will have been cheated. All the requirements necessary to con" stitute a legal contract for the alienation of property have been outraged, yet that which the law in its civil issues treats as void, by the sublimated metaphysics of the criminal law is made valid. This is a refinement in the direction of protecting guilt and defrauding innocence ; it is a distinction in violation of common sense, and of all the analogies of the law, and if I were not bound by precedents I should not hesitate to declare all such transactions larcenies.
The court has, without any hesitation and' without argument on the part of the United States, concluded to affirm the decision below, and it is so ordered. '